## COMMONWEALTH *vs.* JAMES HAWKINS

An indictment, containing one good count, will not be quashed for defects in the other counts; but judgment may be rendered on the good count.

A witness may be impeached by evidence of his previous contradictory statements, without first calling his attention to such statements; but not by evidence of his having omitted, on a former examination, facts now stated by him.

On a trial for murder, when the homicide is conceded, and all the attending circumstances appear in evidence, and no excuse or justification is shown, the burden of proving malice is on the Commonwealth.

Intoxication, at the time of committing a homicide, is not entitled to any weight, in determining whether the provocation was such as to reduce the crime from murder to manslaughter.

INDICTMENT against James Hawkins and James Hicks, for the murder of Alexander T. Leet. The first count duly charged the murder to have been committed by a stab in the heart with a dirk knife held by Hawkins. The second count charged the murder to have been committed by blows of the fists of Hawkins, and a wound with a metallic pitcher held by Hicks, and a stab in the heart with a knife held by Hawkins, of which blows and wounds Leet died. The attorney general entered a *nolle prosequi* as to Hicks; and Hawkins was tried on the 30th of May 1855, before the chief justice and Justices Metcalf and Bigelow.

Before the jury were empanelled, *J. A. Bolles & T. S. Harlow*, for the defendant, moved the court to quash the indictment, because the second count did not allege the blows and wounds to be mortal, nor state with sufficient certainty when and where the stabbing was perpetrated.

*J. H. Clifford*, (Attorney General,) for the Commonwealth. If the second count be quashed, it will not carry the first count with it; but judgment may still be rendered on the good count. *Brown* v. *Commonwealth*, 8 Mass. 63.

*Bolles*, in reply. By the English authorities, one count cannot be quashed, and a trial had on the others; but if one count is bad, the whole indictment must be quashed. 1 Chit. Crim, Law, 303. *Rex* v. *Pewtress*, 2 Stra. 1026, and Cas. temp.

Hardw. 203.    Bac. Ab. Indictment, K.    *O' Connell* v. *The Queen,*
11 Cl. & Fin. 155.    In *Commonwealth* v. *Brown,* 8 Mass. 63,
the point was assumed by the court, without giving any rea-
sons.

SHAW, C. J.    A motion to quash is always addressed to the
discretion of the court.    When the court can see that the in-
dictment is so defective that it would not support a verdict, it
will be quashed.    But no exception is taken to the first count
in this indictment.    And the practice in this commonwealth has
always been to enter judgment on the good count when the
others are defective.                    *Motion to quash overruled.*

The evidence was that, after insulting words had passed be-
tween Leet and Hawkins, who was somewhat under the influ-
ence of strong drink, they fought with their fists, and while they
were fighting, Hicks struck Leet on the head with a pewter
pitcher, and Leet knocked Hawkins down, and struck him after
he was down ; and that a few minutes later, (the evidence vary-
ing between eight minutes and a quarter of an hour,) while Leet
was washing the blood from the cut made by the pitcher, Haw-
kins came behind him, and stabbed him in the heart with a dirk
knife, of which wound he died.    The defendant's counsel did
not controvert these facts ; but contended that the blow with the
knife was struck in the heat of blood, under the violence of pas-
sion excited by the previous combat and beating; and that the
defendant was guilty of manslaughter only.

*Bolles,* for the defendant, offered the depositions, taken before
the coroner, at the inquest on the body of Leet, for the purpose
of contradicting the evidence given by the same witnesses at
this trial, when called by the Commonwealth.    The attorney
general objected, on the ground that the witnesses sought to be
impeached had not been asked, on their examination, whether
they had not previously made different statements, nor had their
attention in any way called to their depositions before the cor-
oner.

But THE COURT were of opinion that, for the purpose of im-
peaching the witnesses, such parts of their depositions were

admissible as were contradictory of the evidence given by them at the trial; that the uniform practice in this commonwealth, differing in this respect from that of England, and some of the other states, had been, as stated in *Tucker* v. *Welsh,* 17 Mass. 160, to allow the introduction of evidence that a witness had previously made different statements, without first calling his attention to such statements; that, after such parts had been read, the Commonwealth would have the right to require the whole of the former statement to be read, and might recall the witness afterwards to explain the alleged discrepancy.

*Bolles* then proposed to point out to the jury that these witnesses had omitted, in their testimony before the coroner, material facts to which they had now testified, and which, he argued, were so important that they could not have been omitted then, and remembered now, consistently with the ordinary workings of a good memory and a good conscience.

But THE COURT ruled that those parts only of the testimony before the coroner could be read, for the purpose of impeaching the character of the witness, which went to show a discrepancy or contradiction, as by showing that the witness had given different accounts at different times, by alleging a fact at one time which he denied at another, or by stating it in two ways inconsistent with each other; and that the mere omission to state a fact, or stating i⁺ less fully before the coroner, was not a subject for comment to the jury, unless the attention of the witness was particularly called to it at the inquest.

*Bolles* contended that the burden of proof was on the Commonwealth to prove malice, and was proceeding to argue to the court in support of the dissenting opinion of Wilde, J. in *Commonwealth* v. *York,* 9 Met. 91, and against the opinion of the majority of the court in that case, when he was interrupted by the chief justice, who remarked that the doctrine of *York's case* was that where the killing is proved to have been committed by the defendant, and *nothing further is shown,* the presumption of law is that it was malicious and an act of murder; and that this was inapplicable to the present case, where the circumstances

attending the homicide were fully shown by the evidence And on this point, the chief justice instructed the jury as follows: The murder charged must be proved; the burden of proof is on the Commonwealth to prove the case; all the evidence, on both sides, which the jury find true, is to be taken into consideration; and if, the homicide being conceded, no excuse or justification is shown, it is either murder or manslaughter; and if the jury, upon all the circumstances, are satisfied, beyond a reasonable doubt, that it was done with malice, they will return a verdict of murder; otherwise, they will find the defendant guilty of manslaughter.

*Bolles* also contended that if, upon the evidence, the jury were satisfied that there was mutual combat, or other provocation sufficient to reduce the homicide from murder to manslaughter, provided the fatal blow was struck in the heat of blood and paroxysm of anger thereby produced, so that they were called on to inquire whether, between the provocation and the crime, the defendant had reasonable time to cool, or did actually cool, it was proper for them to consider how far the defendant's intoxication had, or might have had any effect in prolonging that paroxysm of anger. 1 Hale P. C. 32. 1 Russell on Crimes, (7th Amer. ed.) 8. *Rex* v. *Thomas*, 7 Car. & P. 820. *Rex* v. *Carroll*, 7 Car. & P. 145. *Rex* v. *Meakin*, 7 Car. & P. 297. *Pennsylvania* v. *M'Fall*, Addison, 257. *The State* v. *McCants*, 1 Speers, 384. *Cornwell* v. *The State*, Mart. & Yerg. 147. *Swan* v. *The State*, 4 Humph. 136. 3 Greenl. Ev. §§ 6, 148. 3 Amer. Jurist. 1–20.

But the chief justice instructed the jury thus: The rule of law is, that although the use of intoxicating liquors does to some extent blind the reason and exasperate the passions, yet, as a man voluntarily brings it upon himself, he cannot use it as an excuse, or justification or extenuation of crime. A man, because he is intoxicated, is not deprived of any legal advantage or protection; but he cannot avail himself of his intoxication to exempt him from any legal responsibility, which would attach to him, if sober. *Verdict, guilty of manslaughter*