STATE OF NORTH CAROLINA v. CHARLIE WALKER

No. 7519SC368

(Filed 21 January 1976)

1. **Homicide § 28— self-defense — failure to instruct on defense of home — harmless error**

The trial court in a homicide case erred in failing to include in its instructions on self-defense any reference to defendant's right to defend himself in his own home from trespassers and assailants where there was some evidence that deceased was about to attack defendant with a water glass when he shot her; however, such error was harmless beyond a reasonable doubt where defendant contended that the shooting was accidental rather than in self-defense, the court adequately instructed on accident and misadventure, and defendant had the benefit of an instruction on self-defense to which he was not entitled.

2. **Homicide §§ 14, 24— burden of proof — self-defense, accident, misadventure — nonretroactivity of Mullaney decision**

Since the decision of *Mullaney v. Wilbur,* 421 U.S. 684 (1975) is not retroactive, it was not erroneous for the court in a homicide trial held before the date of that decision to place on defendant the burden of proving self-defense, accident or misadventure.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 21 February 1975 in Superior Court, ROWAN County. Heard in the Court of Appeals 29 August 1975.

Defendant was indicted for the murder of one Ester Mae Massey, who had cohabited with defendant for approximately 14 years. Five months before her death, Ester allegedly deserted defendant and moved to South Carolina with another man. Ester returned to defendant's home in October 1974, and she and defendant quarreled over the presence of defendant's new girl friend. Defendant testified that he asked Ester to leave his home and return to South Carolina, but Ester refused to leave.

The actual events immediately preceding and precipitating the shooting are controverted, but two shots were fired and Ester lay dead. When the police arrived, Ester's body was on the floor. A 10 to 12-ounce water glass lay nearby in a small pool of water. Defendant told the arresting officers that Ester had drawn back her hand to throw the glass at him and he shot reflexively, claiming he thought the weapon was, unloaded. Defendant explained that he brandished the weapon only to scare Ester into leaving.

Defendant's story, however, is not uncontroverted. Calvin Britt, Ester's teenage son, testified at trial that Ester never attacked defendant and that the water glass lay on the coffee table until it was jarred off by Ester's body tumbling from the couch.

The investigating officer read from a statement given by defendant that "Ester Mae began to curse him and his temper flew hot and he pulled his pistol from his pocket and shot her twice. He, Charlie Walker, shot her once and she fell to the floor but she kind of set up and Charlie Walker shot her again."

At trial defendant testified that when deceased drew back to hit him with the glass, he knew she could hit him because she had stabbed him once and broken his arm once. He got scared and nervous and snatched his gun. "I was going to scare her out of the house with an empty gun. I didn't know the gun was loaded. I was going to try and scare her out and when I turned around the gun went off twice before I knowed it. It was an automatic pistol. It was quick. God only knows I didn't know the gun was loaded."

The State went to trial on a second-degree murder theory and all lesser included offenses. Upon a plea of not guilty, the jury returned a verdict of guilty of voluntary manslaughter. From judgment sentencing him to 16 to 20 years imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney William H. Guy, for the State.*

*Davis, Ford and Weinhold, by Larry G. Ford, for defendant appellant.*

MORRIS, Judge.

Defendant brings forward as purported error three aspects of the trial court's charge to the jury. Defendant maintains

that (1) the court's instructions regarding self-defense failed to include the defendant's right to defend himself in his home and lacked any reference to the legal concept of a "home"; (2) the court misstated the law by instructing the jury that defendant had the burden of proving self-defense, accident or misadventure; and (3) the court erred in purportedly limiting defendant's possibility of acquittal to a finding of self-defense or accident.

[1]  Defendant first contends that the trial court erred by failing to include in its instructions on self-defense any reference to defendant's right to defend himself in his home from trespassers and assailants and by omitting any definition of the term "home." It is clear from the undisputed evidence that defendant was in his home, and no definition of the word was necessary.

Judge Clark, recently speaking for this Court, noted that where " . . . the evidence for the defendant tended to show that at the time of the assault, defendant was in his own home; that he was assaulted by the victim; that the victim refused to leave after being requested to do so several times; and that he shot when the victim started to grab him . . . the trial court was required under G.S. 1-180 to declare and explain the law arising from the evidence as it related to the rights of the defendant to evict a trespasser from his home and to defend himself and his home from attack." *State v. Kelly,* 24 N.C. App. 670, 672, 211 S.E. 2d 854 (1975). See also *State v. Spruill,* 225 N.C. 356, 358, 34 S.E. 2d 142 (1945) ; 40 Am. Jur. 2d, Homicide, § 179.

However, to warrant a *sua sponte* instruction there must be *some* evidence; if there is none, then there is no error in a court's failure to charge as to the principle of self-defense in one's home. *State v. Pettiford,* 239 N.C. 301, 79 S.E. 2d 517 (1954).

In the instant case, there is some evidence, albeit contested, that Ester was about to attack defendant. Thus, it would seem initially, that *Kelly* might be dispositive. However, if the failure to instruct was harmless beyond a reasonable doubt, defendant is not entitled to a new trial. Defendant contends on appeal that he killed in self-defense in his own home where he had no duty to retreat from an assault. Defendant's own evidence, however, indicates that he *did not know the gun was loaded.* It is inconceivable that one could expect to stand his ground and

repel an assault with an unloaded gun. His further testimony is to the effect that he only intended to "scare her out" of the house with the unloaded gun; that although he knew she could hit him with the glass, he thought he could scare her into leaving by pointing an unloaded gun at her. Then, he says, the gun went off, and it was a quick two shots because the gun was automatic. This evidence is inconsistent with self-defense and calls for an instruction on accident and misadventure rather than defense in one's own home. The court adequately instructed on accident and misadventure. Out of an abundance of caution, the court also instructed on self-defense. Defendant has had the benefit of both, although the record clearly indicates accident as his defense. We are of the opinion that the court's failure to charge on self-defense in his own home, if error, is harmless beyond a reasonable doubt.

[2]   Defendant next contends that the court erred in charging the jury that defendant had the burden of proving self-defense, accident or misadventure.

In charging the jury, the trial court stated:

"When an intentional killing is admitted or established, the law presumes malice from the use of a deadly weapon and the defendant is guilty of murder in the second degree unless he can satisfy you, members of the jury, of the truth of the facts which justify his act or mitigates it to manslaughter.

The burden is on the defendant to establish such facts to the satisfaction of the jury unless they arise out of the evidence against him. The intensity of the proof required is that you, members of the jury, must be satisfied. Even proof by the greater weight of the evidence may be sufficient to satisfy you members of the jury. Hence, the correct rule as to the intensity of such proof, is that when the intentional killing of a human being with a deadly weapon is admitted or is established by the evidence, the law then casts upon the defendant the burden of proving to the satisfaction of the jury, not by the greater weight of the evidence, nor beyond a reasonable doubt, but simply to the satisfaction of you, members of the jury, the legal provocation that will rob the crime of malice and thus reduce it to manslaughter or will excuse it altogether upon the grounds of self-defense or accident or misadventure."

The United States Supreme Court recently held that a statute, requiring a defendant to prove that he killed in the heat of passion on sudden provocation in order to reduce the crime from murder to manslaughter, is violative of due process. *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

Our Supreme Court, however, has recently addressed the problems raised in *Mullaney* and held

" . . . that by reason of the decision in *Mullaney* the Due Process Clause of the Fourteenth Amendment prohibits the use of our long-standing rules in homicide cases that a defendant in order to rebut the presumption of malice must prove to the satisfaction of the jury that he killed in the heat of a sudden passion and to rebut the presumption of unlawfulness, that he killed in self-defense. The instructions given here insofar as they placed these burdens of proof on the defendant violate the concept of due process announced for the first time in *Mullaney*. We decline, however, for reasons hereinafter stated, to give *Mullaney* retroactive effect in North Carolina. We hold that because the trial judge instructed the jury in accordance with our law of homicides as it stood, and in a trial conducted, before the *Mullaney* decision, the defendant is not entitled to the benefit of the *Mullaney* doctrine. We will, however, apply the decision to all trials conducted on or after June 9, 1975." *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975).

Therefore, this contention is overruled in view of our Supreme Court's determination that in North Carolina *Mullaney* is to be given prospective effect only.

Finally, defendant contends that the court prejudicially limited the defendant's possibility for acquittal to a jury finding of self-defense or accident. This argument is without merit. The court's charge must be read contextually, and when so read, the trial court never limited the jury to acquittal based only on self-defense or accident.

No error.

Judges VAUGHN and CLARK concur.