**Victor VARGAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–85–00278–CR.**

Court of Appeals of Texas,
San Antonio.

Aug. 5, 1987.

Sid L. Harle, San Antonio, for appellant.

Sam Millsap, Jr., Former Criminal Dist. Atty., Fred G. Rodriguez, Criminal Dist. Atty., Emil Holiner, Barbara Hervey, Raymond Hardy, Jr., San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment of a conviction in a murder case. TEX.PENAL CODE ANN. § 19.02 (Vernon 1974).

Appellant was indicted for murder. He was tried jointly with Eduardo "Eddie" Farias (Farias) before the same jury. At the end of the State's case-in-chief the trial court overruled and denied appellant's motion for instructed verdict. Appellant presented no evidence in his defense. The trial court instructed the jury on the law of parties. The jury found appellant and Farias, each guilty of the offense as charged and assessed their punishment at 30 years' confinement. Appellant presents us with two points of error on appeal. We reverse.

Appellant's points of error are as follows:

### POINT OF ERROR NUMBER ONE

The trial court erred in denying appellant's motion for instructed verdict at the close of the State's evidence, as to the offense charged, because the evidence is insufficient to show appellant's culpability in the offense.

### POINT OF ERROR NUMBER TWO

Appellant's conviction was void because his retained counsel did not render effective assistance of counsel.

At the outset we note that our consideration of appellant's initial point of error is dispositive of this appeal. We therefore have not considered his point of error complaining of ineffective assistance of counsel.

Appellant's challenge regarding culpability is limited to the sufficiency of the evidence at the time the motion for instructed verdict was presented and it does not challenge the sufficiency of the evidence to support the conviction. Generally, the question of sufficiency is to be determined from all of the evidence. *See Gordon v. State*, 640 S.W.2d 743, 757 (Tex.App. —San Antonio 1982, no pet.). In the case before us appellant presented no evidence in his behalf at the guilt-innocence phase of the trial. Accordingly, the record limits us to a review of the evidence presented by the State in its case-in-chief. In accordance with our standard of review on appeal, we must consider the evidence in the record in the light most favorable to the State.

Ricardo Maldonado, Jr., testified that on the night of July 18, 1984, while a patron at the Piedras Negras Lounge in Universal City, he saw Farias push the deceased to the floor while the deceased was dancing by himself in the lounge. When the deceased got up from the floor Farias poured a can of beer over the deceased's head.

Ernesto "Ernie" Perez, owner of Ernie's Barber Shop, testified that his barber shop and the Piedras Negras Lounge are located in the same building. Perez stated that on the morning of July 19, 1984, he opened his building and, as was his custom, he checked the premises. Outside the building along the west wall of the barber shop, Perez noticed "a bunch of blood." Perez stated he went inside and called the Universal City Police. He also testified that a trash dumpster had been located behind Mi Casa Restaurant, a restaurant in a building across the alley from his building. However, Perez stated he did not know if the trash dumpster was there on the day in question.

Lieutenant William Tusch, Universal City Police Department, testified that on July 19, 1984, as Patrol Supervisor, he went to

Ernie's Barber Shop in answer to a call from his dispatcher at approximately 9:30 a.m. Tusch contacted Ernie Perez who showed him the blood and a handprint on the outside of the building. Tusch stated he followed the blood to an empty trash dumpster and noticed a large pool of "coagulated blood" on the backside of the dumpster. In company with Sergeant Meeks, an investigator for the Universal City Police Department, Tusch took samples of the blood off the walls, measured distances, took markings and photographs. Tusch also talked to Lupe Magana, the owner of the lounge, who walked up to the scene while he was conducting the investigation. Magana told him that he has seen the deceased arguing with "two L.A. Males" outside his place of business in the parking lot as he was closing up the lounge. Magana stated he took no action, closed up the place and went home to bed.

Ronald Meeks, Sergeant Detective Investigator with the Universal City Police Department, testified that he took samples of the blood on the wall, samples of the blood behind the building and samples of the blood at the dumpster. He turned over these samples to the San Antonio Police Department Crime Laboratory. He also measured what appeared to be drag marks on the ground behind the building. On July 26, 1984, he met with Lupe Magana who told him that Farias had killed the deceased. Magana stated to Meeks that on the night of the murder he was awakened by Farias around 4:00 or 4:30 a.m.

William Baca, a resident from the area, testified that while looking for his lost dogs in an area near Universal City, he discovered the body of the deceased covered by a green colored carpet. Baca stated he called the Bexar County Sheriff's Office and later he guided the Sheriff's deputy to the location where he had found the body.

Sabina Gutierrez, Deputy Sheriff assigned to the Patrol Division of the Bexar County Sheriff's Office, in response to a call from her dispatcher on July 23, 1984, met with William Baca. Baca guided her to the body of the deceased and she requested that the Homicide Unit of the Be-

xar County Sheriff's Office be sent to the scene. Upon the unit's arrival at the scene she went back on patrol.

Dr. Vincent Di Maio, Chief Medical Examiner for Bexar County testified that an autopsy was performed on the deceased. Di Maio stated that the deceased died "as a result of multiple fractures of the skull, due to blunt trauma to the head."

Maria Carrillo Perez, sister of the deceased, testified that she last saw the deceased alive on the morning of July 18, 1984.

Guadalupe "Lupe" Magana testified that his father was the owner of the Piedras Negras Lounge and, on the night of July 18, 1984, Magana was at the lounge helping his father. Magana further testified that he saw nothing or no one at the time he closed up the lounge that night. After closing the lounge, Magana took a waitress home and he went home to bed. Magana was later awakened by Farias at 4:00 a.m. Farias told him that he had "killed the old man" and requested that Magana take him back to the lounge to pick up his truck. Magana drove Farias to the lounge behind the building where Farias got out of the truck and he dragged the deceased's body out of some bushes. According to Magana, Farias "flung" the body in the back of the truck. Magana stated he drove Farias to Cresent Bend, near Cibolo Creek, where Farias got out, "Drug the body out and dumped it in a ditch." Magana testified that Farias covered the body with a piece of green carpet. Magana recalled that they drove back to the lounge where Farias picked up a pair of glasses and a shirt. As they proceeded to Farias' house, Farias threw the glasses out of the truck and told Magana: "Let's go wash the truck." At the truck wash, Magana testified that Farias threw away the shirt. After washing the truck, at Farias' suggestion, they went to MacDonald's for breakfast. Magana further testified that because of his inability to sleep he called Sergeant Meeks and he cooperated fully with the police. Magana admitted giving three statements to the police and that he had lied when he stated he saw the deceased arguing with "two

L.A. Males" in the parking lot of the lounge at closing time on the day in question. Farias also admitted that he never knew when appellant left the lounge that night.

Sergeant Meeks testified that on July 30, 1984, in company of Sergeant Hughey and Ranger Rudy Rodriguez, he arrested appellant on a warrant at appellant's residence. The officers picked up a pair of tan boots with blood on them from appellant's apartment. The boots were entrusted to the San Antonio Police Department Crime Laboratory by Sergeant Hughey. Sergeant Meeks read State's Exhibit 22 to the jury. State's Exhibit 22 is a statement made by appellant on July 30, 1984 and, in pertinent part, reads as follows:

> ... My name is Victor Vargas ... On July 18, 1984 between 7:45 p.m. and 8 p.m. I went to Piedras Negras Lounge ... After the pool tournament I realized I was outside Piedras Negras trying to avoid Eddie Farias from hitting some man.
> Everyone in the bar had been drinking. I saw Eddie hitting him and hitting him. I told Eddie Farias to stop but Eddie Farias would not stop. I left Piedras Negras and I went home and went to bed. I got up the next morning. I knew we were in a hassel at Piedras Negras and then I saw blood on the middle part of my left boot and the bottom seam area of my blue jeans. I knew that because all of the blood on my boot and pants that the man had to be hurt bad....

Charles Dewey, Detective Sergeant with the Universal City Police Department, testified as to the events concerning the taking of State's Exhibit 19 and State's Exhibit 24; both were statements given by Farias on July 26, 1984, in which Farias admitted having beaten the deceased, going home and then waking up Magana to dump the body.

Bertha Hill, neighbor of Farias on the night in question, testified that Farias and appellant were in her trailer home at about 2:00 or 2:30 a.m. on July 19, 1984. Hill testified that Farias and appellant were "pretty drunk," they had blood on their hands and they: "looked like they had got in a fight." Appellant had blood on his left boot and "looked like he had kicked something. I don't know." Hill stated that they both washed their hands while in her house. Farias told her, while appellant was washing his hands, that "we just killed a son-of-bitch." The State argued at the time that Farias' statement was a silent admission on Vargas' part since Vargas heard the statement and said nothing. However, the record does not indicate whether Vargas was in the same room when Farias made the statement or was in a position to hear the statement.

According to Hill, appellant said: "I didn't know anything about tonight." Ms. Hill further testified that appellant's statement was a threat to her and that he was referring to her.

It is a well recognized principal of law in this State that to sustain a conviction, it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty stronger than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. *Phillips v. State,* 164 Tex.Crim. 78, 297 S.W.2d 134, 135 (1957). The State must prove each and every element of the offense beyond a reasonable doubt under the 14th Amendment Due Process Clause. *Mullaney v. Wilbur,* 421 U.S. 684, 699–700, 95 S.Ct. 1881, 1889–90, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970).

■ The evidence reflects that the State's entire case against appellant was circumstantial. We are of the opinion that the evidence does not measure up to the demands of the law of circumstantial evidence. The statement of the accomplice Farias in the presence of Ms. Hill is not corroborated by other evidence tending to connect appellant with the offense committed and, in our opinion, Farias' statement shows only the commission of the offense. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). From the record, appel-

lant's statement shows that he was present at or near the scene of the offense. However, presence of an accused at or near the scene of the offense may not be sufficient proof of participation in the offense charged in the absence of other testimony. Failure of the State to call material witnesses to connect appellant with the offense charged raises a reasonable doubt as to the sufficiency of the circumstantial evidence to support the conviction.

We hold that the trial court erred in overruling the appellant's motion for instructed verdict because the circumstances as presented by the State amounted to nothing more than "strong suspicion" and "mere probability" of appellant's participation in the offense charged.

Accordingly, the judgment of conviction is reversed and this cause is remanded to the trial court for purposes of the entry of a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 26, 98 S.Ct. 2151, 2155, 57 L.Ed.2d 15 (1978).

CADENA, C.J., dissents.

CADENA, Chief Justice, dissenting.

I believe there is sufficient evidence to sustain the conviction. The statement by Farias which was made in the presence of, and unchallenged by, appellant that he and appellant had "just killed a son-of-bitch," together with the blood on appellant, is sufficient to connect appellant with the crime and this testimony does not require corroboration since it is not the testimony of the accomplice. The testimony of Mrs. Hill is admissible as an admission by appellant. *Crestfield v. State*, 471 S.W.2d 50, 53 (Tex.Crim.App.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1764, 32 L.Ed.2d 115 (1971); *Hill v. State*, 456 S.W.2d 699, 700 (Tex. Crim.App.1970).