**George Lee HUGHES, Petitioner,**

v.

**Robert BORG, Warden of Folsom State Prison, Respondent.**

**No. C–87–3966–CAL.**

United States District Court, N.D. California.

Sept. 14, 1988.

George L. Hughes, Represa, Cal., in pro per.

Margo J. Yu, Deputy Atty. Gen., San Francisco, Cal., for respondent.

## ORDER DENYING WRIT OF HABEAS CORPUS

LEGGE, District Judge.

Petitioner George Lee Hughes is a state prisoner who has filed this petition for a writ of habeas corpus challenging his conviction and imprisonment. Petitioner was convicted by a state court jury of first degree murder, with three special circumstances, nine robberies, and possession of a handgun by an ex-felon.[1] He is currently serving a sentence of life imprisonment without possibility of parole, plus nine years.

### I.

Petitioner seeks a writ of habeas corpus on the following grounds:

(1) He claims that there was jury misconduct and prosecutorial misconduct because certain items, which had not been admitted into evidence, were in the jury room during the jury's deliberations.

(2) He claims ineffective assistance of counsel on appeal, on the grounds that counsel allegedly failed to resolve inaccuracies in the record on appeal, failed to cite to the record to support facts presented in the petition for review to the California Su-

---

1. The California Court of Appeal struck one of the special circumstances.

preme Court, allowed evidentiary excerpts to be excised from the petition for review, and failed to object to alleged errors made by trial counsel.

(3) He claims that the trial court's failure to give a special jury instruction on the issue of intent to kill denied him due process.

This court issued an order to show cause on the petition for the writ. Respondent answered and submitted the transcripts and exhibits. Petitioner traversed. And the matter was submitted for decision. This court has reviewed the moving and opposing papers, the very voluminous record, and the applicable authorities.

## II.

Petitioner has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254. Some of the grounds raised in this petition were presented to the California Supreme Court in a petition for review, which was denied. All of the grounds were presented to a California Court of Appeal and to the California Supreme Court by petitions for writs of habeas corpus. Those petitions were also denied. Venue is proper in this district, as petitioner was convicted in Contra Costa County. 28 U.S.C. § 2241(d).

Petitioner has not established that any of the claims in his petition require an evidentiary hearing. 28 U.S.C. § 2254(d). In addition, the court finds that petitioner's claims are such that they can be resolved from the state court record, and that it is not necessary to exercise the court's discretion to order a hearing. *See Knaubert v. Goldsmith,* 791 F.2d 722, 727 n. 3 (9th Cir.1986), *cert. denied,* 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986). The court will therefore resolve the issues on the present record.

## III.

### MISCONDUCT IN THE JURY DELIBERATIONS

Petitioner contends that he was denied due process because certain items, which had not been admitted into evidence but only marked for identification, were in the jury room during the jury's deliberations. The items were: a police report of an anonymous phone caller who stated that he had overheard a phone call between petitioner's brother-in-law Charles Cox and an unidentified person, in which Cox stated that petitioner had confessed to Cox; a search warrant affidavit; and a police report regarding the course of the investigation of the murder. There is no question that these items were in the jury room during the jury's deliberations.

When a jury considers evidence that has not been introduced into the trial record, the defendant is entitled to a new trial if there exists a reasonable possibility that the extrinsic material could have affected the verdict. *Marino v. Vasquez,* 812 F.2d 499, 504 (9th Cir.1987); *Gibson v. Clanon,* 633 F.2d 851 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981). The "reasonable possibility" test applies to the collateral review of state court judgments. *Id.*

In this case, the court concludes that the extrinsic material was merely duplicative. And the evidence of petitioner's guilt which was properly before the jury was so overwhelming, that there is no reasonable possibility that in the absence of the extrinsic material the jury would have found petitioner not guilty.

The prosecution's version of the offense was as follows: On November 8, 1980 at 1:00 a.m., the victim Mary Lou Washington closed the Church's Fried Chicken restaurant in which she worked and where petitioner had once worked. At about 3:00 a.m., after cleaning up, Ms. Washington left the store and walked to her car. She was carrying $2,506 in cash from the restaurant; one of her duties was to make deposits for the restaurant. Petitioner approached Ms. Washington and asked for help. She said, "No, I can't help you," continued walking, and got into her car. Petitioner forced his way into the driver's seat of her car by displaying a gun, and drove away with Ms. Washington. Ms. Washington told petitioner that he could "have anything" and begged for her life.

He shot her in the head, took the money, dumped her body, and parked her car at a BART station.

The evidence introduced at trial included that relating to the murder of Ms. Washington, and that regarding robberies and related offenses committed by petitioner. As to the latter offenses, defense counsel made a tactical decision not to contest the robbery charges that were not connected to the murder charge. In his opening statement, defense counsel admitted to the jury that petitioner had committed the charged robberies, but denied the murder.

The prosecution presented the following evidence:

Sammy Lewis, another employee of Church's Fried Chicken, testified that on the night of the crime, at about 3:00 a.m., he and Ms. Washington went to the parking lot to get into their cars; that Ms. Washington saw a man who she appeared to know speak to her and ask her for help; that the man got into the car with Ms. Washington and drove off with her. Lewis further testified that the day after Ms. Washington was abducted, petitioner came up to him, and although Ms. Washington had not yet been reported missing, petitioner said to Lewis, "You didn't see me with Mary last night, did you?" Lewis replied, "What do you mean?" and petitioner stated, "It wasn't me that you saw with Mary. I have an alibi. I was in Los Angeles." Lewis testified that he realized petitioner was the person he had seen drive off with Ms. Washington. Lewis further testified that the area manager found $2,506 in receipts missing from the restaurant.

After the victim's car was located, the police spoke with a Ms. Banducchi, who testified at trial that she saw a man, whom she identified as petitioner, park the car, get out, and wipe the exterior and interior. The interior of the victim's car was stained with blood that matched Ms. Washington's blood type. The police found a bullet and empty cartridges in the car. The bullet was introduced into evidence. Petitioner's father's gun, which was found at petitioner's father's residence, was introduced into evidence. A few days after the murder,

petitioner made a diary entry in which he stated that he had returned his father's "piece." An expert testified that the bullet found in the victim's car was shot from the gun owned by petitioner's father.

The prosecution introduced into evidence a tote bag which was obtained in a search of petitioner's residence. A friend of Ms. Washington identified the bag as one the victim had owned. The bag was covered with blood, which matched the victim's blood type. The search of petitioner's residence also uncovered a gun, which was registered in the name of Ms. Washington, and which she either carried with her or in her car.

The prosecution introduced into evidence petitioner's diaries for 1980, and 1981, in which petitioner chronicled his crimes. For example, the entry for January 18, 1981, the day after he robbed Round Table Pizza, reads: "Bingo 500 everything went down as planned no problems at all." And on February 10, 1981, the day he robbed J.J. Mills Pizza, petitioner wrote: "BOOM 600." The entry in appellant's diary for November 7, 1980, reads in part: "Bingo Disco 2000 one of the greatest developements [sic] of my life."

Sergeant Mitchell testified that when petitioner was taken in custody, petitioner's girlfriend yelled at petitioner that a search warrant had been served at his father's house. Petitioner then made a call. Sergeant Mitchell testified that he heard petitioner ask what the police had taken, that there was a short pause, and that petitioner then replied, "Well, they got the right gun." Petitioner then said that he would be going away for 20 years or longer.

Petitioner's brother-in-law, Charles Cox, testified that petitioner had flagged him down in his car, and told him about the murder. Cox testified that petitioner stated that he had pulled a job at Church's Chicken, that he went over to the victim's car, showed her a gun, that she moved over, and he got into the driver's seat, that he took her on the freeway, that she begged him not to kill her, that he shot her, dumped her body, and parked the car near BART.

Petitioner's main argument concerns the presence in the jury room of a police report of an anonymous phone call. The report stated that the caller overheard a conversation between a relative of petitioner, which turned out to be Charles Cox, and an unidentified third person. According to the anonymous caller, Cox described how petitioner had confessed to him and detailed the crime. That report was essentially duplicative of Cox's own testimony, in which Cox stated that petitioner confessed to Cox, and that Cox told two other people. The jury's review of that police report could not reasonably have affected the verdict because it was merely duplicative of the live testimony, and the other evidence against petitioner was overwhelming.

Petitioner also argues that the erroneous presence of another police report and the search warrant affidavit prejudiced him, because there was reference to "blood stained clothing and other descriptions." However, the reference to the clothing was merely duplicative of the other properly admitted testimony and physical evidence.

The affidavit and report discuss other facts, such as the disappearance of the victim, the identification of the victim's body, where the victim's car was found, the contents of the car, the items found in petitioner's apartment, and the fact that after the victim left the restaurant co-workers saw a man approach her and get into her car. These facts were independently testified to at trial by witnesses and established through physical evidence. For example, co-worker Lewis testified that he saw the victim get into a car with a man on the night of the crime. Officer Priebe testified to how he found the car and what he found in it. He also testified regarding his search of petitioner's apartment, and about the items he found there. Evidence was admitted which proved that the body found by the police was the body of Ms. Washington.

Accordingly, because the items that were erroneously in the jury room during the jury's deliberations were essentially duplicative, and the record establishes that there is no reasonable possibility that the

police reports and search warrant affidavit affected the verdict, petitioner's claim is denied.

Petitioner also claims that the prosecutor committed misconduct because he intentionally placed the police reports and search warrant affidavit in the jury room. However, petitioner has not presented any evidence, nor is there any evidence in the record, that the placement of these items in the jury room was other than the result of inadvertence by someone.

■ In addition, prosecutorial misconduct does not justify habeas corpus relief unless the misconduct was so prejudicial as to render the trial fundamentally unfair. *See Cronnon v. State of Alabama*, 587 F.2d 246, 251 (5th Cir.1979), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). This court has already concluded that the presence of the reports and search warrant affidavit did not prejudice petitioner's defense. Accordingly, petitioner's claim of prosecutorial misconduct is also denied.

## IV.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner alleges that he had ineffective assistance of counsel on appeal. In order to make a claim for ineffective assistance of counsel, petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Birtle*, 792 F.2d 846 (9th Cir.1986). Under *Strickland*, petitioner must establish that counsel's performance was deficient and that the deficiency prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064.

### A.

■ Petitioner contends that his appellate counsel rendered ineffective assistance because he failed to resolve inaccuracies in the record on appeal. Specifically, he claims that Exhibit 26, the police report containing the anonymous phone call, was missing from the record on appeal. Petitioner argues that the method that appel-

late counsel used to remedy the problem was in error, that an evidentiary hearing should have been requested, and that as a result of the error the jury misconduct issue was not properly presented in petitioner's appeal. Petitioner's contention is without merit, based upon the state court record.

In the original record on appeal, Exhibit 26 was missing. When appellate counsel became aware of the error, he filed an application to correct the record on appeal. The court of appeal denied the application without prejudice. A hearing was then conducted on the issue of the missing exhibit. At the hearing, the parties entered into a stipulation to correct the record. Because Exhibit 21, which was part of the record on appeal, also contained a copy of the missing report, counsel for each side agreed that all the arguments raised in the appellate briefs relating to Exhibit 26 would also refer to Exhibit 21. Thus, the appellate court had the language of the report before it.

Petitioner argues that the error caused the court of appeal to misstate the content of the anonymous call. The appellate court opinion states that a call was received from "an anonymous caller who knew both the appellant and the victim and who had overheard the conversation between appellant and Cox." The report does not state that the caller overheard petitioner and Cox. Rather it states that the caller "had overheard a conversation between a relative of George Hughes, and an uninvolved third party." This misquotation by the court was not material, and was not a result of anything done by appellate counsel; it therefore cannot serve as the basis for a claim of ineffective assistance of counsel.

### B.

Petitioner next asserts that his appellate counsel failed to cite the record to support facts presented in the petition for review to the California Supreme Court. Petitioner's claim is without merit. A review of the petition to the California Supreme Court establishes that appellate counsel cited to the record extensively.

### C.

Petitioner further claims that appellate counsel allowed crucial evidentiary excerpts to be excised from the petition for review to the California Supreme Court. That claim is also without merit. When appellate counsel's law clerk attempted to file the petition for review, it had evidentiary exhibits annexed to it. However, the court clerk would not file the petition with the exhibits because the petition exceeded the page limit. The law clerk therefore cut out the exhibits and filed the petition.

Appellate counsel subsequently made a motion to file an appendix containing the evidentiary excerpts. The California Supreme Court granted the motion, and the appendix was filed. Thus, contrary to petitioner's contention, the evidentiary excerpts were reviewed by the California Supreme Court.

### D.

Petitioner contends that appellate counsel failed to raise a claim of ineffective assistance of trial counsel. In order to establish this claim, petitioner must first show that trial counsel's assistance was ineffective. To do so, he must meet the *Strickland* test.

Petitioner does not specifically state what errors of trial counsel he is complaining of. Instead, he refers to pages in the transcripts where the errors allegedly occurred.

■ First, petitioner refers to page 1120 of the trial transcript, which contains part of trial counsel's argument on a motion for mistrial. In petitioner's petition for a writ of habeas corpus to the California Supreme Court, he raised an objection regarding the motion for mistrial. In that petition, he stated that defense counsel rendered ineffective assistance on the motion for mistrial because counsel "clearly admitted that his decision to admit the petitioner to the robbery charges was a mistake, and questioned his own credibility to proceed in light of Cox's testimony."

Petitioner overstates what counsel said during the motion for mistrial. Defense counsel was merely arguing that his credibility was damaged because he had not disclosed to the jury in his opening statement that Cox would testify that petitioner had confessed to the robbery and murder of the victim. Whether or not to make this argument was a tactical decision, and did not amount to ineffective assistance of trial counsel. In addition, appellate counsel did not render ineffective assistance by not raising the issue before the court of appeal. Petitioner's constitutional rights are not violated solely if counsel did not raise every issue requested by defendant. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

Furthermore, the record discloses that trial counsel attempted to protect petitioner from Cox's testimony. Defense counsel attempted to interview Cox about petitioner's admission before Cox testified, but Cox refused to speak with defense counsel. Defense counsel demanded a foundational hearing, which the court granted, to determine if Cox had been coerced into being a prosecution witness. In addition, defense counsel requested that the evidence be excluded pursuant to California Evidence Code section 352, and requested a mistrial because Cox's testimony discredited his opening statement.

Petitioner next cites to pages 1384 and 1393 of the reporter's transcript. Those pages refer to the jury's receipt of the police reports and the search warrant affidavit which were inadvertently before the jury. As discussed above, no prejudice resulted from those documents. Further, the record indicates that trial counsel objected to the admission of those items into evidence. Thus, the presence of those items in the jury room does not serve as a basis for a claim of ineffective assistance of trial counsel.

Petitioner also cites to pages 1187 and 1404 of the reporter's transcript and page 177 of the clerk's transcript. Page 1187 contains some of defense counsel's closing argument; page 1404 contains a discussion by the court and the substitution of new counsel for sentencing, which was upon petitioner's request; and page 177 is part of a cross-examination of a witness during the preliminary hearing. It is not apparent from a review of those pages what petitioner is complaining of. Nor does petitioner state how those portions of the transcript demonstrate errors on the part of trial counsel. This court has attempted to discern the arguments from those citations by petitioner, but cannot see how those pages demonstrate any constitutional error. Accordingly, petitioner's claims regarding those pages are denied.

## V.

### JURY INSTRUCTIONS

■ To state a claim cognizable in a federal habeas corpus proceeding based on the assertion that a jury instruction was in error under state law, petitioner must establish not only an error, but also that the erroneous instruction so infected the entire process as to render the trial fundamentally unfair. *See Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Miller v. Stagner,* 757 F.2d 988, 993 (9th Cir.1985), *modified,* 768 F.2d 1090 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986); *Ahlswede v. Wolff,* 720 F.2d 1108, 1111 (9th Cir.1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 155 (1984). Petitioner has not established that the jury instructions were in error.

■ Petitioner contends that the trial court failed to instruct the jury properly regarding the "intent to kill" necessary to support a felony-murder special circumstance conviction. Petitioner relies on *Carlos v. Superior Court,* 35 Cal.3d 131, 197 Cal.Rptr. 79, 82, 672 P.2d 862 (1983), in which the California Supreme Court held that the statutory language defining the felony-murder circumstance "should be construed to require an intent to kill or to aid in a killing ..." However, (1) petitioner was convicted in 1982, prior to the *Carlos* decision, and (2) in *People v. Anderson,* 43 Cal.3d 1104, 240 Cal.Rptr. 585, 742 P.2d 1306 (1987), the California Supreme Court

expressly overruled *Carlos.* The court in *Anderson* held that a special instruction on intent to kill as an element of felony-murder special circumstance is not required in the absence of evidence from which the jury could find that the defendant was an accomplice rather than an actual killer. *Id.* 240 Cal.Rptr. at 611, 742 P.2d at 1331.

In *People v. Poggi,* 45 Cal.3d 306, 246 Cal.Rptr. 886, 753 P.2d 1082 (1988), the California Supreme Court court held that *Anderson* is to be applied retroactively. The court stated:

> We overruled *Carlos v. Superior Court,* (1983) 35 Cal.3d 131 [197 Cal. Rptr. 79, 672 P.2d 862] in *People v. Anderson,* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306] and held that, with respect to the actual killer, the court need not instruct on intent in connection with felony murder special circumstances. Such an instruction is required only when there is evidence from which the jury could find that the defendant was an accomplice rather than the actual killer.... Defendant stands convicted of a murder that preceded *Carlos. Carlos* itself concluded that the statute was ambiguous with respect to the requirement of intent to kill for a felony-murder special circumstance. (See *People v. Anderson, supra,* 43 Cal.3d at p. 1143 [240 Cal.Rptr. 585, 742 P.2d 1306]) There was ample basis for pre-*Carlos* foreseeability of a holding that such intent is not required for the actual killer. (*People v. Anderson, supra,* 43 Cal.3d at pp. 1138–1149 [240 Cal.Rptr. 585, 742 P.2d 1306])

*Id.* 246 Cal.Rptr. at 898–99, 753 P.2d 1082.

As in *Poggi,* all the evidence here established that petitioner killed the victim, and there was no evidence that he was an accomplice. Accordingly, the court did not err in the instructions to the jury on intent.

Petitioner next contends that the jury instruction was in error under federal law, because the instruction may have allowed the jury to presume intent and find guilt on each special circumstance. He claims this denied him his due process right not to be convicted except upon proof beyond a rea-

sonable doubt of every fact necessary to constitute the crime. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed. 2d 368 (1970). This constitutional principle prohibits the state from using evidentiary presumptions in a jury charge that have the effect of relieving the state of its burden of proof of every essential element of a crime. *Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1970); *Knaubert v. Goldsmith,* 791 F.2d 722 (9th Cir.1986). However, the due process clause requires only that the state prove the existing elements of a crime, not that particular elements be present. *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1951). The California Supreme Court is the ultimate expositor of state law and this court is bound by its construction absent extreme circumstances not present here. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1974).

Under California law, a specific intent to kill is not an element of felony-murder where the defendant is the actual killer. The California Supreme Court stated in *People v. Dillon,* 34 Cal.3d 441, 194 Cal. Rptr. 390, 668 P.2d 697 (1983) (en banc), as follows:

> The "substantive statutory definition" of the crime of first degree felony murder in this state does not include either malice or premeditation: "These elements are eliminated by the felony-murder doctrine, and the only criminal intent required is the specific intent to commit the particular felony." This is "a rule of substantive law in California and not merely an evidentiary shortcut to finding malice as it withdraws from the jury the requirement that they find either express malice or ... implied malice." In short, "malice aforethought is not an element of murder under the felony-murder doctrine."

*Id.* 194 Cal.Rptr. at 410, 668 P.2d 697 (citations omitted). Because intent to kill is not an element for felony-murder under California law, federal due process does not require that an instruction on such intent be given. Accordingly, petitioner's claim

that the jury instructions violated his due process rights is without merit.

## VI.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is denied.