**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DENNIS ALAN SHACKELFORD,

Petitioner-Appellant,

v.

RON CHAMPION, Warden; STATE
OF OKLAHOMA; JAMES L.
SAFFLE,

Respondents-Appellees.

No. 97-6334
(D.C. No. 97-CV-663)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** and **McKAY** , Circuit Judges, and    **BROWN,** ** Senior District
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the appellant's request for a decision on the briefs without

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**      Honorable Wesley E. Brown, Senior District Judge, United States District
Court for the District of Kansas, sitting by designation.

oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Petitioner-appellant Dennis Alan Shackelford seeks review of the denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. He also seeks a certificate of appealability as required under 28 U.S.C. § 2253(c)(1). [1]

Mr. Shackelford was convicted of first degree murder in the shooting death of Thomas "Tyke" Kelly. Petitioner maintained that Mr. Kelly attacked petitioner and that the killing was unintentional and in defense of petitioner and his wife. The background facts do not appear to be in dispute.

Briefly, Mr. and Mrs. Shackelford went to Thomas Kelly's trailer home to discuss a debt allegedly owed Mrs. Shackelford for damage Mr. Kelly had caused to her car earlier in the week. Mr. Shackelford had a gun in his back pocket. As they approached the trailer, Mrs. Shackelford knocked on the door, Mr. Kelly appeared, and he and Mrs. Shackelford had a discussion. Mr. Kelly then stated he would continue the conversation only if Mrs. Shackelford came in the trailer alone. Mr. Shackelford asked her not to, but told Mr. Kelly he wanted things to remain peaceful.

---

[1] The habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Hence, a certificate of appealability is required, which means we must determine that petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

At that point, according to Mr. Shackelford, Mr. Kelly grabbed him by the throat and attempted to throw him over the porch railing. Mr. Shackelford instinctively grabbed the gun and shot Mr. Kelly, who fell backward. Unsure if he had actually hit Mr. Kelly, Mr. Shackelford moved to position himself between Mrs. Shackelford and Mr. Kelly. Mr. Kelly raised up as though attempting to stand back up, and Mr. Shackelford fired another shot.

The evidence at trial showed that Mr. Kelly died of three gunshot wounds, two to the chest and one to the back of the shoulder. The only eyewitness (other than Mr. Shackelford) was Mrs. Shackelford, who had died in a car accident prior to the trial.

Mr. Shackelford testified in his own behalf. The state presented the testimony of witnesses in the vicinity, who testified as to what they heard before and after the shots were fired. None heard any scuffle or argument between the parties prior to the firing of the shots. In addition, the witnesses testified that the shots happened within seconds of the knock on Mr. Kelly's door.

On direct appeal and before the federal district court, Mr. Shackelford raised the following issues:

> (1) the trial court erred in (i) allowing jurors to take notes and to ask questions of witnesses during his trial, (ii) admitting into evidence a videotape of an out-of-court experiment conducted by the Oklahoma State Bureau of Investigation, (iii) submitting certain instructions to the jury and failing to submit certain others and (iv) restricting his cross-examination of state witness, Gary Eischeid; (2) prosecutorial

misconduct deprived him of a fair trial; and (3) the evidence presented at trial was insufficient to support his conviction.

Magistrate Judge's Report and Recommendation, at 1-2.

On appeal to this court, petitioner raises only the following issues: (1) the state trial court erred in allowing the jury to ask questions of witnesses, thereby depriving petitioner of a fair and impartial jury; (2) petitioner was denied his due process rights to a fair trial because of prosecutorial misconduct; (3) certain jury instructions violated petitioner's Fourteenth Amendment due process rights, and (4) petitioner was denied his Sixth and Fourteenth amendment rights to confront adverse witnesses by the state trial court's refusal to allow cross-examination of a certain witness.

## Juror Questions

The magistrate judge determined that the claims raised in ground one were issues of state law related to the manner in which the trial court conducts a criminal trial. He further noted that "Petitioner appears to acknowledge that, as a matter of state law, the [state trial court] has discretion to permit the jury both to take notes and to ask questions of witnesses" (citations omitted), and that petitioner "clearly advocates a change in that law." Report and Recommendation, at 4-5.

-4-

As to permitting the jurors to ask questions of witnesses, Mr. Shackelford ignores the fact that Oklahoma practice allows for this. See Cohee v. State, 942 P.2d 211, 214 (Okla. Crim. App. 1997) (reciting guidelines governing juries in criminal trials which allow the jury to question witnesses); Freeman v. State, 876 P.2d 283, 288-89 (Okla. Crim. App. 1994). Moreover, he does not claim that any particular questions asked were prejudicial or fundamentally unfair. His theory that the procedure may cause jurors to be frustrated or resentful if individual questions were not asked, or that one or two jurors might dominate the questioning, is pure speculation. The trial court was careful to allow only written questions, which were then screened in chambers before either being asked or disallowed. Counsel for Mr. Shackelford conceded it was a matter of the court's discretion whether or not to allow juror questioning. We find no constitutional infirmity which would warrant habeas corpus relief.

**Prosecutorial Misconduct**

Mr. Shackelford next complains of prosecutorial misconduct on several occasions:

A. Opening statement

Mr. Shackelford alleges the prosecutor erred in his opening statement by implying that Mrs. Shackelford's testimony would have been substantially different from (and inconsistent with) that of Mr. Shackelford. Specifically, he

contends that the prosecutor's remark that "Jerrie Shackelford who was also at the doorway of that trailer park is not here and will not be here to give you her version of what happened in the doorway of that trailer," amounts to misleading the jury as to "what [Mrs.] Shackelford's testimony would have been had she lived to testify." Appellant's Br. at 29.

We fail to see how the statement in any way indicates what her testimony *might* have been. The jury was advised that Mrs. Shackelford's death was in no way related to her husband's trial. Even if the remark, which does not implicate a specific constitutional right, was improper, it does not rise to the level of unfairness as to make the conviction a denial of due process. See Moore v. Reynolds, No. 97-6065, 1998 WL 387452 at *27 (10th Cir. July 13, 1998) ("Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Because the prosecutor's remark did not infringe on any specific constitutional right, the claim of prosecutorial misconduct is reviewed in a habeas setting only for fundamental unfairness. See Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Coleman v. Saffle, 869 F.2d 1377, 1395 (10th Cir. 1989)). We conclude there was none.

B. Improper witness questioning

Mr. Shackelford claims the prosecutor's cross-examination of defense witness George Burns, a former Oklahoma City police officer, was improper because the witness was asked if he had been suspended from the police department after having been arrested. Petitioner's objection to the question was sustained, and no further questions on the subject were asked.

Mr. Shackelford also complains that the prosecutor's cross-examination of him regarding karate lessons, a punching bag and weight equipment improperly implied that petitioner could have fended off Mr. Kelly's attack without using the gun. The magistrate judge determined that the record reflected that petitioner's trial counsel then established that petitioner had taken karate lessons for a short period and had not practiced it in many years. It was also established that the purpose of the punching bag and weight equipment was overall fitness.

Mr. Shackelford also argues that he was improperly questioned regarding martial arts tatoos, which he asserts portrayed him as "a violent tattooed thug." He concedes, however, that trial counsel's objection to this question was sustained, and he does not dispute the magistrate judge's finding that the record shows that the jury was immediately admonished to disregard the question.

The prosecutor further allegedly violated the ruling on an earlier motion in limine by asking questions about Mr. Shackelford's emotional problems and

threats of suicide. The trial court overruled the objection with respect to the prior suicide threats, but sustained the objection to questions about other emotional problems. Again petitioner has failed to demonstrate any errors rising to the level of constitutional violations.

C. Misconduct in closing arguments

Here, Mr. Shackelford claims the prosecutor misstated Oklahoma law in stating that a lesser included instruction on manslaughter is automatic when self-defense is raised as a defense to first degree murder. He also claims the prosecutor erroneously encouraged the jury to sympathize with the victim and improperly "made a naked appeal to societal alarm by suggesting to the jury that if [Mr. Shackelford] was not sentenced to life without parole, he would again have an opportunity to commit acts of violence." Appellant's Br. at 38.

As with his arguments on the alleged improper remarks during the prosecutor's opening statement, petitioner recognizes the standard of review on habeas corpus, i.e., that prosecutorial comments violate due process only when so egregious in the context of the entire trial as to render the trial fundamentally unfair. See Donnelly, 416 U.S. at 642-48. At most the prosecutorial errors complained of might constitute violations of state law. See, e.g., Tolber v. State, 688 P.2d 350, 354 (Okla. Crim. App. 1984) (error to persuade jury away from judge's instruction on manslaughter); Cummings v. State, 578 P.2d 377, 380

(Okla. Crim. App. 1978) (character impeachment improper); President v. State,
602 P.2d 222, 226 (Okla. Crim. App. 1979) (improper prosecutorial argument
warranted modified sentence); Robinson v. State, 574 P.2d 1069, 1072 (Okla.
Crim. App. 1978) (same). However, "[r]emarks that would cause us to reverse in
a direct appeal of a federal conviction are not necessarily grounds for reversal
when spoken in state courts." Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir.
1986). In a federal habeas action reviewing a state prosecutor's conduct, our
review is not a broad exercise of supervisory power, but rather is narrowly
confined to violations of due process. See Brecheen v. Reynolds, 41 F.3d 1343,
1355 (10th Cir. 1994). The errors here alleged, as the magistrate judge correctly
found, do not rise to the level of federal constitutional violations.

**Jury Instructions**

As his third claim of error, Mr. Shackelford contends that certain jury
instructions violated his Fourteenth Amendment due process rights. Specifically,
he claims the trial court erred in giving the following instruction on intent:

> The "intent" with which an act is done is the mental state of mind of
> the accused and, therefore, direct and positive proof of intent is not
> necessary. If you find that an act was done, then the intent with
> which it was done is to be gathered and determined by you from all
> the facts and circumstances as the same have been established and
> shown by all the evidence presented during the trial of this case.

Appellant's App. at 73.

In reviewing instructions for federal constitutional error:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned. (quotations, citation, and footnote omitted).

Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

Mr. Shackelford contends that this instruction unconstitutionally shifted "the burden of proof to the accused to prove a lack of intent in violation of the Fourteenth Amendment's due process clause" and in violation of the Supreme Court's dictates in Yates v. Aiken, 484 U.S. 211 (1988); Francis v. Franklin, 471 U.S. 307 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Mullaney v. Wilbur, 421 U.S. 684 (1975). We disagree.

The instruction suffers from no infirmity of the "burden shifting" nature found unconstitutional by the Supreme Court in its cases reviewing presumptions because the instruction involves no presumptions whatever. Instead, the instruction merely recites that intent is a mental state of mind which the jury is to determine from all the facts and circumstances shown by all the evidence presented. Moreover, we have considered a nearly identical instruction and found no constitutional violation, and specifically that it "does not establish a

-10-

presumption or shift the burden of proof." See Fisher v. Champion, No. 91-5014, 1991 WL 166402, at **3-4 and n.2 (10th Cir. Aug. 28, 1991) (unpublished order and judgment).

He next claims that the trial court's instructions on heat of passion manslaughter "failed to properly allocate the burden of proof to the prosecution," contrary to the dictates of Mullaney, 421 U.S. at 704 ("Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case."). Appellant's Br. at 43. Again, we disagree. The very language of the instruction requires that a defendant may not be convicted of first degree manslaughter unless the state proves beyond a reasonable doubt that "when performing the conduct which caused the death, defendant was in a heat of passion." Appellant's App. at 76. We find no federal constitutional infirmity in this instruction.

Petitioner also argues that the trial court violated this court's requirements set forth in United States v. Lofton, 776 F.2d 918, 920-21 (10th Cir. 1985) (in federal murder prosecution under 18 U.S.C. § 1111(a) where heat of passion is raised as defense, defendant entitled to instruction that government has duty to prove beyond reasonable doubt the absence of heat of passion in order to obtain murder conviction).

In this case, petitioner has appended only four of apparently over fifty instructions given at trial. None of those furnished this court are constitutionally infirm. "A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). "'The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.'" Id. (quoting Henderson v. Kibbe, 431 U.S. at 154).

Lofton requires that instructions meet the constitutional requirements of Mullaney v. Wilbur, 421 U.S. at 697-98, i.e., that the "state prove beyond a reasonable doubt the absence of heat of passion on sudden provocation where the issue is properly presented in a homicide case." By attaching only the manslaughter instruction in support of his argument, petitioner has not provided us with a sufficient record from which to conclude that the jury was inadequately instructed, let alone that he has met the heavy burden of establishing that the instructions violated due process. It is up to counsel to see that record excerpts are sufficient for us to consider and determine the issues on appeal; we are under no obligation to fulfill that responsibility. See Rubner & Kutner, P.C. v. United

-12-

States Trustee (In re Lederman Enters., Inc.) , 997 F.2d 1321, 1323 (10th Cir.

1993); King v. Unocal Corp. , 58 F.3d 586, 587 (10th Cir. 1995).

**Denial of Right to Confrontation**

Finally, Mr. Shackelford claims the trial court erred in refusing to allow

cross-examination of a detective with respect to a statement given the detective by

Mrs. Shackelford the morning *after* the shooting. The trial court excluded the

statement as hearsay (and not admissible under the "excited utterance exception")

and was unpersuaded by petitioner's alternative theory that the statement was

necessary to correct the false impression left by the prosecution that Mrs.

Shackelford would have testified differently than (i.e., contrary to) petitioner.

The magistrate judge determined that exclusion of the statement was well

supported by state law and, more importantly, that in any event the prosecutor did

not directly comment on how Mrs. Shackelford would have testified. Again, at

most petitioner has alleged an error of state law, which a federal court in habeas

corpus proceedings does not sit to correct. See Estelle v. McGuire , 502 U.S. 62,

71-72 (1991).

We conclude that petitioner has failed to make a substantial showing of a

denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). Accordingly, we

DENY petitioner's request for a certificate of appealability.

The appeal is DISMISSED.

-13-

Entered for the Court


Monroe G. McKay
Circuit Judge