Louis **ROULEAU**, Petitioner–Appellee,

v.

Larry **MEACHUM**, Connecticut Commissioner of Correction, Respondent–Appellant.

No. 1594, Docket 92–2132.

United States Court of Appeals, Second Circuit.

Argued June 1, 1992.

Decided Aug. 27, 1992.

James M. Ralls, Wallingford, Conn., for respondent-appellant.

G. Douglas Nash, Public Defender, New Haven, Conn., for petitioner-appellee.

Before: OAKES, NEWMAN and McLAUGHLIN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This is an appeal by the Connecticut Commissioner of Correction ("the State") from a judgment of the District Court for the District of Connecticut (José A. Cabranes, Judge) granting a conditional writ of habeas corpus sought by petitioner Louis Rouleau to challenge his state court conviction for conspiracy to commit robbery. The appeal invites us to determine whether Connecticut has violated the requirements of the Due Process Clause by placing on a defendant the burden of persuasion with respect to duress. We decline the invitation, concluding that any error in the jury instruction concerning duress was harmless with respect to the robbery conspiracy charge. We therefore reverse and remand with directions to deny the petition.

### Facts

Rouleau was charged with several offenses arising from an episode in which he and five others victimized a prostitute. The State's evidence at Rouleau's trial permitted the jury to find the following facts. The defendant and two others, riding in a van, met a friend who told them of her need for money to obtain bail for her boyfriend. Ultimately the group, which had grown to six persons, decided to pick up a prostitute and rob her. While one member of the group drove, the others waited behind a blanket that partitioned the interior of the van. The driver located a prostitute and invited her into the van. The others then sexually assaulted and robbed her at gunpoint. Thereafter one member of the group asked Rouleau to drive, which he did. Three occupants asked to be dropped off and left the van. As one left, she told the others that they might as well kill the prostitute to prevent her from reporting the episode to the police.

One of the three remaining in the van then directed Rouleau to drive to a wooded area and stop. While Rouleau waited in the van, the other two took the prostitute, whose hands were tied, out of the van and fired three shots, two of which struck her but inflicted no serious injury. The victim attempted to flee, was struck by one of the remaining culprits with a rock, and ultimately succeeded in chasing the two culprits back into the van by threatening them with a stick and a rock. The van left the scene, and the victim called the police. On the basis of the prostitute's report, information from the wife of one of the culprits, and a search of the van, the six members of the group were arrested.

Rouleau was tried on five charges: aiding robbery in the first degree, Conn.Gen. Stat. §§ 53a–134(a)(2), 53a–8 (1991); conspiracy to commit robbery in the first degree, id. §§ 53a–134(a)(2), 53a–48(a); aiding kidnapping in the first degree with a firearm, id. §§ 53a–92a(a), 53a–8; conspiracy to commit murder, id. §§ 53a–53a(a), 53a–48(a); and sexual assault in the first degree with a deadly weapon, id. § 53a–70a. One member of the group that had committed the crimes testified that Rouleau had participated in the conversation planning the robbery and had agreed to commit the robbery. The mother of that participant testified that Rouleau had admitted to her his role in planning the robbery.

Rouleau testified that he had been drinking alcohol and smoking pot during the day of the episode and had fallen asleep in the back of the van. He claimed that when he awoke, there was a stranger in the back of the van. When he asked the group what was going on, he learned that they had

picked up a prostitute and were trying to rob her. Rouleau testified that he told the group he did not want "anything to do with this." One member of the group then directed Rouleau to drive. When Rouleau refused, he was told, in a nasty voice, that he "better get up front and drive." He complied, drove as directed, and remained in the van during the attempted murder. He denied participating in the robbery or the sexual assault.

The jury convicted Rouleau of conspiracy to commit robbery, aiding robbery, aiding kidnapping, and conspiracy to commit murder, and acquitted him of sexual assault. The Connecticut Supreme Court reversed the substantive robbery and kidnapping counts and the murder conspiracy count, but affirmed the robbery conspiracy count. *State, v. Rouleau,* 204 Conn. 240, 528 A.2d 343 (1987). Though there had been no request to charge on the issue of duress nor any objection to the charge, the State Court entertained Rouleau's claim that the charge was defective because it placed on the defendant the burden of persuasion with respect to duress. The Court entertained the claim because of the " 'exceptional circumstance' " that " 'the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial.' " *Id.* at 243, 528 A.2d at 345 (quoting *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973)). The Court ruled that "[t]he state's burden of proof beyond a reasonable doubt encompasses, in an appropriate case, a burden of disproving duress beyond a reasonable doubt." *Id.* The Court expressed its view that the state bore such a burden "[a]s a matter of due process." *Id.* at 253, 528 A.2d at 349. That the Court felt bound by the due process requirements of federal law is indicated by its citation of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The State Court then considered the significance of the trial court's error in assigning the burden of proof on duress to the defendant and concluded that the error required reversal of the substantive robbery and kidnapping counts and the murder conspiracy count. However, the Court deemed the error harmless with respect to the robbery conspiracy count because "[t]he duress testified to by the defendant occurred after the crime of conspiracy to commit robbery in the first degree had taken place." *Rouleau,* 204 Conn. at 259, 528 A.2d at 352.

Rouleau's petition for habeas corpus relief was filed in the District Court and referred to Magistrate Judge Latimer for a recommended ruling. The Magistrate Judge concluded that Connecticut law regarded the absence of duress as an element of the offense and that federal constitutional law therefore required the prosecution to bear the burden of persuasion on the issue. Upon receipt of this recommendation, Judge Cabranes, recognizing the ambiguities in the State Supreme Court's *Rouleau* opinion as to whether duress was a defense or its absence was an element of the crime, certified to the State Court the question whether absence of duress is an element of conspiracy to commit robbery. The State Court declined to accept the certification, without explanation.

Judge Cabranes then undertook his own examination of the issue and agreed with the Magistrate Judge that the State Supreme Court had regarded the absence of duress as an element of the crime. He therefore agreed that the charge was erroneous under federal constitutional standards for placing the burden of persuasion on the defendant. Finally, Judge Cabranes agreed with the Magistrate Judge that the error was not harmless. Both judicial officers expressed the view that Rouleau had testified that, under duress, he had joined an ongoing conspiracy to commit robbery; they noted that Connecticut law recognizes that a person may join a conspiracy at any time during its existence. "In these. circumstances," Judge Cabranes concluded, "the jury could have decided that the duress to which [Rouleau] testified occurred while the conspiracy was still unfinished" and "had the jury been properly instructed that the state bore the burden of proving the absence of duress, the jury might have acquitted [Rouleau] on the charge of con-

spiracy to commit robbery." He therefore issued a conditional writ of habeas corpus.

## Discussion

■ Preliminarily, we observe that we are not so certain as the District Court that Connecticut considers the absence of duress to be an element of the offense. The District Court, acknowledging the ambiguities in the State Court's opinion, relied primarily on that Court's statement that "[a]s a matter of due process, the state bore the burden of disproving duress beyond a reasonable doubt," *Rouleau*, 204 Conn. at 253, 528 A.2d at 349, and the citation to *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). But this passage supports either of two inferences. One, drawn by the District Court, is that the State Court believes that the absence of duress, like the "heat of passion" claim in *Wilbur*, is not just a defense but a negation of the mental state necessary for conviction and therefore an element of the offense that the state must prove, at least once the issue is raised by some evidence from the defendant. But the other inference is that the State Court was incorrectly concluding that due process always requires a state to prove the absence of an affirmative defense, once the defendant has presented sufficient evidence to raise the defense. If that was the State Court's view, it was incorrect. The Supreme Court has distinguished between elements of an offense, as to which the state always bears the burden, and affirmative defenses, as to which the state bears the burden of negation only when the defendant introduces some evidence of the defense. *See Engle v. Isaac*, 456 U.S. 107, 120 n. 20, 102 S.Ct. 1558, 1568 n. 20, 71 L.Ed.2d 783 (1982). In *Isaac*, the Court rejected the idea that "whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime." *Id.* at 120, 102 S.Ct. at 1567–68. As the Court noted:

A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. The Due Process Clause does not mandate

that when a State treats absence of an affirmative defense as an "element" of the crime for one purpose, it must do so for all purposes.

*Id.* at 120, 102 S.Ct. at 1568 (footnote omitted).

■ Just prior to the decision in *Rouleau*, the Connecticut Supreme Court had explicitly noted the divergence of opinion as to whether duress is a defense of justification or whether it is the negation of intent such that its absence is an element of the offense. *See State v. Fuller*, 199 Conn. 273, 280, 506 A.2d 556, 560 (1986). It would be somewhat surprising if the Connecticut Supreme Court, having explicitly identified the issue in *Fuller*, implicitly resolved it against the prosecution in *Rouleau* without discussion and signaled that result only by a citation to *Mullaney*. The issue was of no consequence to any aspect of the State Court's decision since, as a matter of *state* law, the prosecution bore the burden of disproving duress, whether duress was a defense or the absence of duress was an element. *See* Conn.Gen. Stat. § 53a–12 (1991); *State v. Fuller*, 199 Conn. at 280, 506 A.2d at 560.

■ However, we need not attempt to divine the State Court's thinking on this question because, even if we assume that the charge on duress violated federal due process standards, we agree with that Court's conclusion that the error in the charge was harmless as to the robbery conspiracy count. The State Court concluded that the duress claimed by Rouleau occurred after the crime of conspiracy to commit robbery had taken place. The District Court disagreed, expressing the view that the robbery conspiracy was ongoing when Rouleau claimed to have woken up and that the jury "could have decided" that Rouleau joined the conspiracy at that point and did so because of duress.

Though there is a remote possibility that the jury might have convicted on this basis, we consider it entirely too insubstantial to warrant the exercise of habeas corpus jurisdiction to vacate Rouleau's conviction. The prosecution made no claim that Rouleau joined the robbery conspiracy when he woke up. In fact, the prosecutor told the

jurors in his summation that even if they believed that Rouleau fell asleep in the van, as he claimed, he would still be guilty of conspiracy to commit murder, aiding kidnapping, and sexual assault. Trial transcript at 433. The prosecutor's argument thus made clear to the jurors that Rouleau's guilt on the robbery conspiracy charge turned on whether he had participated in the conversation planning the robbery *before* the moment when he claimed to have fallen asleep. It was the State's contention, supported by the testimony of an accomplice, that Rouleau joined the robbery conspiracy early in the day before the prostitute ever entered the van. The State's evidence showed that Rouleau did not fall asleep and wake up to find a robbery in progress. Moreover, Rouleau himself made no claim that he ever agreed to participate in the robbery, even after awaking from his alleged sleep. His claim was that he told the group that he did not want to have anything to do with the robbery, and that, allegedly under duress, he merely agreed to drive the van.

As the case was tried and submitted to the jury, the only disputed issue for the jury on the robbery conspiracy count was whether the prosecution had proven beyond a reasonable doubt that Rouleau participated in the conversation, early in the day, about planning to rob a prostitute. The accomplice testified that he did, and her mother testified that Rouleau admitted that he did. Rouleau denied that conversation. The jury believed the prosecution's witnesses. Any error as to the instruction on the duress claimed to have occurred later had no bearing on the resolution of that factual dispute. We are satisfied "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and was therefore harmless as to the robbery conspiracy charge.

The judgment of the District Court is reversed, and the case is remanded with directions to deny the petition.