**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DARRIN LENALD COOPER,<br>        Debtor. | BAP No. WW-23-1098-CBS<br><br>Bk. No. 2:20-bk-11937-MLB |
| DARRIN LENALD COOPER,<br>        Appellant,<br>v.<br>SOCIAL SECURITY ADMINISTRATION,<br>        Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Marc L. Barreca, Bankruptcy Judge, Presiding

Before: CORBIT, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

The Social Security Administration (the "Agency") overpaid Darrin Cooper ("Cooper") disability insurance benefits. Subsequently, Cooper filed for relief pursuant to chapter 7[1] of the Bankruptcy Code. After Cooper received a discharge, the Agency proceeded to deduct the prepetition overpayment from Cooper's post-petition disability insurance benefits. Cooper reopened his

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1

bankruptcy case and moved to hold the Agency in contempt for violating the discharge injunction by collecting the prepetition overpayment after entry of his bankruptcy discharge. The bankruptcy court, in applying the equitable doctrine of recoupment, denied Cooper's motion and Cooper appealed. Because we discern no error, we AFFIRM.

## FACTS

### A. Pre-bankruptcy events

In 2007 Cooper was injured while he worked for Boeing Company. Cooper began receiving workers' compensation benefits through the Washington State Department of Labor & Industries. Cooper received monthly workers' compensation benefits of $4,862.25 or more.

In May 2017, Cooper applied to the Agency for Social Security Disability Insurance Benefits ("SSDI")[2] and Supplemental Security Income ("SSI"). Cooper's application summary indicated that Cooper had stated that he had been unable to work since February 9, 2009, and that he had "filed or intend[ed] to file for workers' compensation . . . but [he was] not receiving benefits." Cooper's 2017 SSDI application was denied.

Cooper, with the assistance of counsel, appealed the denial decision. After an administrative hearing, an administrative law judge ("ALJ") issued Cooper a fully favorable decision on April 30, 2019.

---

[2] SSDI payments are part of the program that most people simply call "Social Security," which provides "old age," survivors, and disability insurance benefits. 42 U.S.C. §§ 401-434.

### 1. Fully favorable decision

In the decision, the ALJ found that Cooper had been disabled as defined in 42 U.S.C. § 1382(a)(3)[3] since December 1, 2014 (Cooper's amended onset disability date). The ALJ decision also informed Cooper that the Agency would let Cooper know if he would receive SSI in addition to SSDI payments. The ALJ decision warned Cooper that the "workers' compensation offset provisions at 20 CFR 404.408 may be applicable."

### 2. Workers' compensation/public disability benefit questionnaire

On May 1, 2019, after receiving his favorable SSDI decision, Cooper faxed his responses to the Agency's questionnaire regarding workers' compensation and public disability benefits to the Agency's field office in Everett, Washington. The questionnaire specifically requested information from Cooper regarding any other disability payments he was receiving. Cooper disclosed he was receiving workers' compensation from the state of Washington and attached a payment summary.

Although it was the Agency's field office in Everett, Washington that sent the questionnaire and solicited the information, its Western Program Service Center, in Richmond, California ("Western PSC") was responsible for

---

[3] The "Social Security Act" is codified at 42 U.S.C. §§ 301-1397mm. It has become a sprawling statute and provides for a myriad of benefit programs. Title II of the Social Security Act contains the provisions for "Federal Old-Age, Survivors, and Disability Insurance Benefits." For a list of the provisions of the Social Security Act, see the Table of Contents to the Compilation of the Social Security Laws https://www.ssa.gov/OP_Home/ssact/ssact-toc.htm (last accessed Jan. 12, 2024).

approving Cooper's SSDI claim on May 3, 2019 (based on the ALJ's fully favorable decision).

Unfortunately, because the Everett Office failed to correctly process Cooper's responses to the workers' compensation/public disability benefit questionnaire, the Western PSC did not know that Cooper was receiving additional disability benefits. Consequently, the Western PSC calculated Cooper's SSDI benefits based on the erroneous belief that Cooper was not receiving any other disability compensation.

### 3.    Notice of Award and receipt of SSDI funds

On May 10, 2019, the Agency informed Cooper that based on the ALJ's favorable SSDI decision, he was entitled to SSDI payments of approximately $1,800 per month beginning May 2016. The notice stated that the Agency would hold Cooper's past due SSDI benefits, approximately $73,355.50 (representing retroactive SSDI payments Cooper should have received May 2016 through April 2019), pending a determination of whether Cooper had also received SSI benefits during that time. The notice instructed that if he had also received SSI benefits then his retroactive SSDI benefits would be reduced accordingly.

The notice of award also informed Cooper that if he received workers' compensation benefit payments, the Agency might have to reduce his SSDI. The notice warned Cooper in bold text: "you may have to pay back any Social Security benefits that you were not due. Please let us know the decision on the [workers' compensation] claim right away."

The Agency ultimately determined that Cooper did not get SSI money for May 2016 through April 2019 and sent a notice of change in benefits. The notice

4

informed Cooper that the Agency would be sending Cooper a check for $67,355.50 representing his retroactive SSDI benefits for May 2016 through April 2019, less a $6,000 payment to his legal representative and Medicare premiums.

In August 2019, the Agency sent Cooper the check for $67,355.50. At the same time, Cooper began receiving monthly SSDI payments of approximately $2,000.

## B.     Cooper's bankruptcy

On July 21, 2020, Cooper filed a chapter 7 bankruptcy petition.[4] Cooper's Schedule I listed monthly social security payments of $1,999.00 and monthly pension or retirement income of $925.[5] Cooper did not list the Agency as a creditor, and thus the Agency did not receive notice of Cooper's bankruptcy filing. After the chapter 7 trustee determined it was a no-asset case, Cooper received a discharge on October 21, 2020, and the case was closed on October 30, 2020.

## C.     Agency's overpayment

Subsequently, the Agency requested additional evidence related to Cooper's receipt of workers' compensation. On December 26, 2020, Cooper responded to the Agency's "2nd Request for Evidence . . . Request for Workers'

---

[4] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[5] It appears that Cooper included his workers' compensation payments under line 8g. "pension or retirement income" which is understandable given that the payments were referred to as pension payments in some documents. However, Cooper stated it was $925 per month even though his workers' compensation payments were always between $3,800-$4,500 per month.

Compensation Information." Cooper responded that he was receiving workers' compensation payments. Cooper's response included records showing that he had been receiving workers' compensation benefits through the Washington State Department of Labor and Industries for a period that included at least February 2016 through November 2020. Cooper also sent a notice of his bankruptcy discharge with a note stating that "any funds I may owe Social Security Adm. is [sic] included in the bankruptcy."

After processing the information about Cooper's other disability benefit payments, the Agency issued Cooper a notice of change in benefits dated October 30, 2022. The notice explained that because Cooper received workers' compensation payments from May 2016 through May 2019, the period during which Cooper received both SSDI and unreduced workers' compensation benefits, the Agency had overpaid Cooper $73,112.90. The notice further explained, "[w]e adjusted your past-due benefit amount due to your workers' compensation payments. You or your representative did not provide proof of your workers' compensation when your claim was adjudicated. Therefore, you . . . are overpaid."

Cooper was given the option to repay the overpayment, or the Agency would recover the overpayment by withholding his benefit payments starting in January 2023. Cooper was also notified he could: (i) request a waiver; (ii) request the Agency withhold less than his full monthly benefit based on his financial needs; and/or (iii) could appeal the Agency's decision that he was overpaid.

Cooper did not seek a waiver or appeal the Agency's decision regarding the overpayment. Instead, Cooper's attorney moved to reopen Cooper's bankruptcy case and filed a motion for an order to show cause why the Agency "should not be held in contempt for violating the automatic stay 11 U.S.C. § 362" (the "Motion").

**D.    Motion to hold Agency in contempt**

Although the Motion caption indicated that Cooper sought an order finding the Agency in contempt for violating the automatic stay, the body of the Motion argued that the Agency had violated the bankruptcy discharge injunction "by continuing to recoup [Cooper's] discharged pre-petition Social Security overpayment from his current payments."

Cooper asserted that the overpayment was due to the Agency's error in failing to properly communicate between offices that he was also receiving state workers' compensation benefits because of his disability. Cooper explained that he was unaware of the overpayment at the time he filed his bankruptcy and thus, the Agency was not listed as a creditor. Cooper argued that "debts owed to creditors in a no-asset Chapter 7 case are still discharged even when they are not listed in a debtor's schedules." Cooper concluded that the overpayment debt to the Agency was discharged regardless of whether the Agency had notice of his bankruptcy. Cooper sought an order holding the Agency in contempt for violating the discharge injunction by continuing to collect on a discharged debt.

In the Agency's opposition to the Motion, it argued that "[e]quitable recoupment is a well-recognized exception to both the discharge injunction and

automatic stay that the Ninth Circuit has applied in closely analogous cases." The Agency argued that it was statutorily required to recover any overpayment and Cooper's legal entitlement to ongoing SSDI payments depended on whether he had received any SSDI overpayments. The Agency concluded that it had properly invoked equitable recoupment and its recovery of the overpayment from Cooper's continuing stream of SSDI payments did not violate either the discharge injunction or automatic stay.

After a hearing and supplemental briefing, the bankruptcy court provided an oral ruling on May 10, 2023. The single issue was whether the Agency properly invoked the equitable remedy of recoupment to recover the SSDI overpayment from Cooper's future SSDI payments. If recoupment was authorized, the Agency's withholding from Cooper's post-petition SSDI payments did not violate the discharge injunction.

In its oral ruling, the bankruptcy court first explained that recoupment is an equitable doctrine that, although not explicitly addressed in the Bankruptcy Code, permits one party to recover an obligation from a second party because the second party owes a countervailing obligation to the first party, so long as both obligations arise out of the same "transaction or occurrence." The bankruptcy court noted that the Ninth Circuit applies a "logical relationship" test when determining whether countervailing obligations arise from the same transaction.

The bankruptcy court next determined that regardless of fault, Cooper's "prepetition overpayment occurred regarding the same prepetition SSDI entitlement as the post-bankruptcy SSDI entitlement payments the Agency

seeks to recoup against." Therefore, the bankruptcy court determined there was a "very strong logical relationship," between the prepetition SSDI overpayment and the ongoing post-discharge SSDI payments.

Based on its findings and conclusions, the bankruptcy court denied Cooper's Motion, determining that the "Agency's recoupment of [Cooper's] prepetition overpayment is neither a violation of the discharge order or the automatic stay, and therefore, not subject to civil contempt sanctions." The bankruptcy court entered an order memorializing its oral ruling.

Cooper timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in allowing the Agency to apply equitable recoupment to recover the overpayment?

Was the application of recoupment equitable?

## STANDARDS OF REVIEW

When, as here, "the historical facts are established, the rule of law is undisputed . . . and the issue is whether the facts satisfy the legal rule," there is a mixed question of law and fact. *Murray v. Bammer* (*In re Bammer*), 131 F.3d 788, 792 (9th Cir. 1997). In such situations we review mixed questions de novo. *Id.*; *Murray v. Bammer (In re Bammer),* 131 F.3d 788, 792 (9th Cir. 1997). De novo means that we review a matter anew, as if no decision previously had been rendered. *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).

9

However, because recoupment is an equitable doctrine and its use by the bankruptcy court is permissive, we review the bankruptcy court's decision to apply recoupment for an abuse of discretion. *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 882 (9th Cir. 2008). A bankruptcy court abuses its discretion if it applies the wrong legal standard or if "its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 887-88 (9th Cir. 2010).

## DISCUSSION

### A.    Equitable Doctrine of Recoupment

"Equitable recoupment is a common law doctrine that is not expressly recognized in the Bankruptcy Code, but is preserved through judicial decisions." *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 753-54 (9th Cir BAP 2001); *see also Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993) ("It is well settled . . . that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment.").

As it applies in bankruptcy law, the equitable doctrine of recoupment allows a creditor to withhold funds owed to the debtor to offset a claim that arises from the same transaction as the debtor's claim, without reliance on, or limited by, the setoff provisions of § 553. *See Gardens Reg'l Hosp. & Med. Ctr. Liquidating Tr. v. Cal. (In re Gardens Reg'l Hosp. & Med. Ctr., Inc.)*, 975 F.3d 926, 933 (9th Cir. 2020). Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, there is no claim against estate

10

property, and recoupment is not subject to the automatic stay or the discharge injunction. *In re Madigan*, 270 B.R. at 754; *Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (9th Cir. BAP 1995). Furthermore, because recoupment allows the creditor to use the discharged debt defensively, despite the discharge injunction, the doctrine essentially allows a creditor to recover a prepetition debt out of payments owed to the debtor post-petition. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996).

However, the "'limitation of recoupment that balances [these] advantage[s]' under bankruptcy law 'is that the claims or rights giving rise to recoupment must arise from the **same transaction or occurrence** that gave rise to the liability sought to be enforced by the bankruptcy estate.'" *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d at 934 (quoting *Sims v. U.S. Dep't of Health & Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 (9th Cir. 2000)) (emphasis in original). The term "transaction" is given a liberal and flexible construction, and may comprehend a series of many occurrences, "depending not so much upon the immediateness of their connection as upon their logical relationship." *In re Madigan*, 270 B.R. at 755 (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

To determine whether the "same transaction" requirement of recoupment is satisfied, the Ninth Circuit instructs bankruptcy courts to apply the "logical relationship test." *See In re TLC Hosps., Inc.*, 224 F.3d at 1012; *Newbery Corp.*, 95 F.3d at 1403. This "logical relationship test" asks whether the creditor's claim arises out of the same aggregate set of operative facts as the debtor's claim. *In re Madigan*, 270 B.R. at 755 (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d

11

113, 115 (9th Cir. 1992)). As stated in *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d at 934, the "test remains whether the relevant rights being asserted against the debtor are sufficiently logically connected to the debtor's countervailing obligations such that they may be fairly said to constitute part of the same transaction." (Citation omitted).

## B.    The logical relationship test

In applying the logical relationship test in equitable recoupment cases, "courts have permitted a variety of obligations to be recouped against each other, requiring only that the obligations be sufficiently interconnected so that it would be unjust to insist that one party fulfill its obligation without requiring the same of the other party." *In re Madigan*, 270 B.R. at 755. Although no Ninth Circuit cases are directly on point, the Ninth Circuit has held the doctrine of equitable recoupment applied in similar cases including the overpayments of both federal[6] and state Medicaid,[7] and state retirement benefits.[8]

For example, a BAP panel held that a state pension provider's recoupment of its overpayment from the debtor's ongoing pension payments did not violate the automatic stay. *In re Williamson*, 2018 WL 4926430, at *3. Similar to this case, the debtor received an overpayment of benefits prepetition and the creditor attempted to recoup the prepetition overpayment by reducing debtor's on-going post-petition payments. *Id.* at *2. The BAP panel agreed with the

---

[6] *In re TLC Hosps., Inc.*, 224 F.3d at 1012-1015.

[7] *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d at 937-940.

[8] *Williamson v. PARS* (*In re Williamson*), BAP No. CC-17-1375-LSF, 2018 WL 4926430 (9th Cir. BAP Oct. 10, 2018), *aff'd*, 795 F. App'x 537 (9th Cir. 2020).

12

bankruptcy court's determination that the "logical relationship test was met because the . . . [overpayment] and the benefits owed [to debtor] arose from the same set of operative facts." *Id.* at *3.

The Ninth Circuit affirmed, holding that "the party seeking recoupment 'may recoup its overpayments by applying them against its post-petition underpayment liabilities to [debtor], without being affected by the automatic stay.'" *In re Williamson*, 795 F. App'x at 538 (quoting *In re TLC Hosps. Inc.*, 224 F.3d at 1014).

However, in another case involving the overpayment of disability benefits, a BAP panel found the facts did not satisfy the logical relationship test, and the creditor could not use recoupment to recover the overpayment from debtor's post-petition disability payments. *See In re Madigan*, 270 B.R. at 761.

In *Madigan*, the debtor was employed by a company that participated in a long-term disability ("LTD") program administered by a private disability benefit insurer. 270 B.R. at 751-52. The debtor applied for and began receiving LTD. The insurer later determined it had overpaid debtor because debtor was also receiving Social Security benefits. *Id.* at 752. The debtor declined the insurer's demand to repay the overpayment. *Id.* Soon thereafter debtor returned to work and filed a chapter 7 petition that listed the insurer as an unsecured creditor. *Id.* The debtor subsequently received a discharge and his no-asset bankruptcy case was closed. *Id.*

After working for a couple of years, the debtor applied a second time for LTD. *Id.* The debtor was approved for benefits, but the insurer "informed the debtor that it would continue to adjust future benefits to recover the . . .

13

prepetition" overpayment. *Id.* In other words, the overpayment occurred during the first disability period, but the creditor attempted to recoup the overpayment by reducing debtor's disability payments during the second disability period. *Id.* Debtor reopened his bankruptcy case and argued that the insurer's reduction in his payments had violated the discharge injunction. *Id.*

The bankruptcy court agreed. *Id.* at 753. It determined that regardless of whether debtor's disability was the same for both disability periods, "the overpayment for the first disability claim was not 'logically related' to . . . [insurer's] reimbursement rights relative to the second disability claim, and therefore the 'same transaction' requirement for equitable recoupment had not been met." *Id.* Accordingly, the bankruptcy court found that the insurer's withholding payments due in the second disability period to reduce the overpayment made during the first disability period violated the discharge injunction. *Id.*

The BAP panel agreed finding the fact the debtor's benefits and overpayment arose from the same insurance policy was insufficient to establish the necessary logical relationship. *Id*. at 756-57. The panel reasoned that the overpayment and benefits were not part of the same transaction because the debtor had two different reimbursement agreements, two disability periods, and two claims separated by a two-year period of employment. *Id*. at 755-57. The panel held that, under these facts, even if the claims for benefits arose from the same injury or recurring illness, the two disability periods were not logically related because "the operative facts for the first disability claim were separate and distinct from those for the second claim." *Id.* at 760. Accordingly, the panel

14

affirmed the bankruptcy court's application of the logical relationship test to deny recoupment. *Id.* at 760-61.

## C. The application of the logical relationship test

Cooper argues that the bankruptcy court erred in applying recoupment because "the Agency cannot show that its pursuit of the $73,112.90 pre-filing overpayment arises from the same transaction or occurrence." Cooper asserts that his on-going entitlement to SSDI payments requires periodic renewed findings by the Agency that he is disabled. Therefore, his current entitlement to SSDI did not arise from the same transaction or occurrence as the overpayment. We disagree.

Unlike the debtor in *Madigan*, no facts suggest that Cooper's disability payments arose from multiple disability periods. Indeed, Cooper has not stated that an intervening period of time existed in which he returned to work and was no longer considered disabled. Nor has Cooper stated that he had one disability at the time of the overpayment but now has a different disability. Rather, the record indicates that Cooper has suffered from the same disability since his entitlement to his first SSDI payment. Although Cooper may have to furnish the Agency with periodic updates as to his disability status, the bankruptcy court did not clearly err in determining that this requirement did not sever the logical relationship between the SSDI overpayment and his current right to on-going SSDI payments.

Consequently, the Agency's obligation to pay Cooper SSDI and Cooper's debt for prior overpayments "logically relate to one another as they both arise from the same aggregate set of operative facts." *In re Williamson*, 795 F. App'x at

15

538 (internal quotation marks, citation, and alteration omitted); *see also In re Harmon*, 188 B.R. at 426.

Furthermore, a legal relationship exists between the overpayment and Cooper's continuing SSDI payments. Applicable to this case, the Social Security Act provides that if a person who has worked long enough, has paid taxes into the system, and is "under a disability," the person "shall be entitled to a disability insurance benefit (i) for each month beginning with the first month after his waiting period . . . in which he becomes so entitled to such insurance benefits[.]" 42 U.S.C. § 423(a)(I)(E). The Social Security Act also provides that, when a recipient has been overpaid benefits, "recovery shall be made" by decreasing the benefit payments to which that person may be entitled. 42 U.S.C. § 404(a). An overpayment occurs when "an individual has received more . . . than the correct payment due under title II of the Act." 20 C.F.R. § 404.501(a).

Thus, Cooper's right to continued SSDI payments and the Agency's obligation to recover any SSDI overpayments to Cooper stem from the same statutory scheme and common fund.

Accordingly, based on the factual and legal logical relationship, the bankruptcy court did not err in finding that the Agency could recoup its prepetition SSDI overpayment by reducing Cooper's ongoing post-petition SSDI payments without violating the discharge injunction.

## D. The application of recoupment was equitable.

Equitable recoupment is permissible only where mutual debts arise from "the same transaction," and where "it would . . . be inequitable for the debtor to

16

enjoy the benefits of that transaction without meeting its obligations." *See Newbery Corp.*, 95 F.3d at 1399, 1403 (citations omitted). Cooper argues at length that the Panel should find the bankruptcy court erred in applying recoupment because it is inequitable to make him pay for the Agency's mistake. Furthermore, Cooper argues that it would not offend equitable principles if he retained the overpayment.

Although Cooper's equity argument resonates, we are bound by contrary Ninth Circuit law and by Cooper's failure to utilize the remedies afforded by the Social Security Act.

As discussed above, the Social Security Act requires the Agency to recover an overpayment. 42 U.S.C. § 404(a)(1)(A). However, the statute explains that recovery of the overpayment may be partially or completely waived if the payee establishes that: (1) he is "without fault" for the overpayment, and (2) recovery would either (a) defeat the purpose of the Act or (b) be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). Recovery of an overpayment defeats the purpose of the Act if it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a).

In this case, Cooper could have, but did not, appeal the overpayment ruling. An appeal of the overpayment ruling would have been the appropriate forum for Cooper to make some of the arguments he makes before this Panel (i.e., that he needs the SSDI payments to meet current ordinary and necessary living expenses). The issue before the bankruptcy court was not whether the

overpayment should be recovered, it was solely whether the Agency properly utilized the equitable remedy of recoupment.

Accordingly, the bankruptcy court and this Panel are obligated to follow Ninth Circuit precedent unless that precedent was overturned by the Supreme Court. *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 22 (9th Cir. BAP 2012) (citing *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1093 (9th Cir. 2007)). As discussed above, equitable recoupment is an established doctrine in the Ninth Circuit, and if the logical relationship test is met, equitable recoupment does not violate the discharge injunction.

Cooper's reliance on the Third Circuit's holding in *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984) is unavailing. Cooper argues that the Panel should follow *Lee*'s holding and determine that "social welfare payments . . . are 'statutory entitlements' rather than contractual rights" and that recoupment, despite its utility in the context of contract disputes, is not suitable in the context of social entitlements. *Lee*, 739 F.2d at 875-76. The Ninth Circuit has previously considered and rejected the reasoning in *Lee* because the Third Circuit does not apply the logical relationship test–it applies a narrower interpretation to the term "same transaction" than that utilized in the Ninth Circuit. *Newbery Corp.*, 95 F.3d at 1403; *In re Madigan*, 270 B.R. at 755-56. In the Ninth Circuit, recoupment is not limited to the contractual context. *In re Madigan*, 270 B.R. at 758.

Cooper also argues that the bankruptcy court failed to properly consider the equity in allowing the Agency to apply recoupment. However, this argument is belied by the record. The record reveals that the bankruptcy court

held an evidentiary hearing at which both parties had the opportunity to testify. The bankruptcy court then solicited additional briefing. Thus, the parties had the opportunity to fully present their evidence and argument, including arguments regarding equity. In its oral ruling, after determining that the elements of recoupment were satisfied, the bankruptcy court acknowledged the hardship recoupment might create, and encouraged the Agency to exercise fairness. Although Cooper may receive less income from the SSDI payments than he would have received had the Agency not paid that income prematurely, the reduced future payments are a function of what Cooper has been paid subject to adjustment to reflect accurately the amount and timing of payments he is due. The bankruptcy court properly considered the equities. Based on the record, we cannot find the application of the equitable doctrine of recoupment was an abuse of discretion.[9]

## CONCLUSION

For the reasons stated above, we AFFIRM.

---

[9] We caution the parties that we (and the bankruptcy court) only determined that recoupment is appropriate under the facts of this case. Importantly, the Agency is recouping the overpayment of SSDI solely from Cooper's ongoing SSDI payments. Although the Social Security Act may give the Agency authority to cross-recover the overpayment by charging against another type of social security benefit to which Cooper may receive, such as SSI or old age benefits, this decision is not so broad as to approve such a charge.